May it please the Court, Robert Koch on behalf of Appellant Leif Hansen. This is a case about what it means to repair a modern car under Oregon law. I'd like to cover three points this morning. First, GEICO elected to repair Mr. Hansen's car. Thus, repair is the operative term in the policy. Second, under Oregon law, Oregon courts interpret the term repair to mean restoring to pre-collision condition. Third, as alleged in Mr. Hansen's complaint, a shop cannot completely restore his modern car to full restoration of pre-collision condition without conducting a digital scan of his car. Digital scans are the only way to identify latent damage to the car's circuitry following a collision. Can I ask a question about that? You make those statements in the brief. At what point, what if this were just a slight, what if it wasn't even a fender bender, you didn't have to replace it, you just had to repaint it because there was a scratch on it. Would your position also be that a scan then had to take place? No, Your Honor, because that wouldn't really rise to a collision. And I know that GEICO makes that point in a footnote towards the end of their brief. But there's no debate with regards to Mr. Hansen that there was a collision to his rear bumper and that that required the repair shop to fix that collision damage. Did they replace the whole bumper then? I believe so, Your Honor, yes. Can I follow up on that? I'm trying to figure out where you're drawing the line and what you think the key allegation in your complaint is that gets you over that line. I gather from what you just said in response to Judge Nelson's question that it wouldn't be enough if I just subjectively thought, you know, I really am not going to feel safe driving this car unless I know for sure that these systems are all intact and notwithstanding the fact that neither the manufacturer is recommending this nor the repair shop, I just won't be able to sleep at night unless I get this done. I gather you're saying that's not enough. Correct. Okay, so what is it that you then need as the car owner? Is it that your mechanic is saying this is something that I think is necessary? Is it just that the manufacturer recommends it? What is it that you need in order to take you outside of the scenario I just described? I think it's a two-part answer, Your Honor. First, this court is tasked with deciding, with interpreting the term repair under Oregon insurance law, and our view of repair is that an ordinary purchaser of insurance would understand repair to mean necessary digital scans to repair collision damage. So that asks, then, what is a necessary repair? Did the body shop ever recommend a diagnostic scan? That's not, I'm not sure, Your Honor. I know that that's not in the record. I know that Mr. Hansen requested one and that he requested one as somebody who has professional experience of repairing cars. Well, I think that's the problem right here. We've got a professional who thinks his car has to be repaired a certain way, and we're interpreting a contract between him and his insurance company. That's why I'm asking you some of these questions. What is there in the record which shows the truck has any damage by failure to do the scan? I'm sorry, can you ask that again, Your Honor? I missed the last part of your question. What is there in the record that suggests the truck has any damage by failure to do the scan? It would be paragraphs 3 and 41 of the complaint, and so— What damage is there? Well, we don't know the exact— You don't know? Is that your answer? Because that's what I'm trying to get at. In the record, we don't know. I know that— Well, in the complaint, you don't know. That's correct. Is there any defect in the truck as a result of the failure to scan? We don't know without doing the scan. We don't know. And that's because damage to a car's circuitry is not going to be visible to the naked eye. Where do you allege that the repairs did not restore your vehicle to its pre-accident physical condition? In paragraphs 3 and 41 of the complaint. You don't say that it didn't. You say you don't know whether it did. Well, we allege that there was damage that was not repaired because it was not identified from the scans. Well, but the bottom line is you don't really suggest that there's damage that needed to be repaired. Your whole of your complaint is, I don't know if there's any damage to be done. I don't know if it was repaired. And you should have done the scans so I would know. Isn't that your complaint? Yes, Your Honor. And did you pay for any scans? After the case was dismissed, yes. But in this record, no. Okay. Is there anything in here that tells me the truck decreased in value as a result of the failure to repair? No, Your Honor. The policy excludes diminished value. I understand that, but I was just trying to see if I couldn't get you some damage. What damages do you allege, then, arising from this breach? The damage is unrepaired. Because the bottom line is I know digital scans cost $100 a scan. I know Geico refused to pay for scans. I know that the refusal to pay for the scans prevented him from getting the scans. Those are all in your complaint. But yet I don't know what the damage is from refusal to do it. Because every time I ask you those, you say, or the complaint says, I don't know. Well, it's impossible for an ordinary purchaser of insurance to know exactly what the damage is to the circuitry of the car following a collision. But the problem comes in that if I'm just construing the strict language of this contract and what should be paid as a result of the contract, there's nothing in here that says how we determine what the loss is. The only way for me to determine what the loss is is for me to say what the loss is, and I say it is, and you say no, it isn't. And then we can have a fight about it. But when I say what the loss is and I've paid it all, and you say, well, I don't know whether you've done it or not, you don't have any allegations to make. I disagree, Your Honor. What allegation do you have under contract law? Under Oregon contract law, Oregon courts interpret repair under policies such as this one to mean restoration. But you don't know that it wasn't restored. There's no way to know that it's been restored. But they say it's restored, and you've got no proof. We allege in paragraphs 3 and 41 that there is unrepaired damage. But you don't know what it is, and I think that's the concern, is that the contract covers loss or damage, and you're really asking GEICO to – the debate seems to me to be how much due diligence does GEICO need to do or the mechanic to determine whether there's loss. And I think GEICO's position is we're doing whatever is the standard – we'll hear from GEICO exactly, but we'll do the standard due diligence, and then we'll repair it. If your client took that car out and a week later found out there was some circuitry that was out of whack, I assume he could take it back, and if they could trace that back to the collision, that GEICO would probably repair that because it would then have been discovered. But the question here is how much due diligence does GEICO need to do in order to find – there's always something more they could have done. And I think the important term that I heard Your Honor use was standard due diligence, and I know that GEICO says that they're doing standard due diligence. Our position is that under Oregon law, when you look at terms from the perspective of an ordinary consumer of insurance, an ordinary consumer of insurance would assume that repairing the car would include diagnosing what's wrong with the car's circuitry. Okay, but that's what I was trying to get at before. Is the key allegation in your complaint it's because the manufacturer recommends that that happen under these circumstances? Because you said it's not enough that the consumer him or herself thinks, geez, based on my experience, I think this would be a good idea. So what is it that you've got that takes you across the other line? It's a combination, Your Honor, of the Gonzales decision by the Oregon Supreme Court, which says that you look to – that repair means restoring completely to pre-collision condition, and that if an attempted repair cannot return it to pre-collision condition, then that's not an adequate repair. We look to the Bush decision by the Oregon court, which says that damage under a policy can include diagnosing what's wrong with the insured property. And then I would say – and then not – and then it's not just the fact that the manufacturers have said that this is required. It's why they said it's required. It's the logic behind that statement. Because if you look at the different position statements, all of them say, oh, you have to use our diagnostic tools. It's not our position that that is somehow imputed into the contract. But they're saying that you have to do these scans because there's literally no other way to identify and diagnose the damage to the car circuitry that's been caused by a collision. Why is it you're not giving a tort concept and trying to make that a part of the contract? It seems to me your best argument from what you've said is the argument for breach of implied covenant of good faith and fair dealing rather than the words of the contract itself. Well, we make both of those claims, Your Honor. Well, I understand you make both claims. My worry is that with the breach of implied covenant of good faith and fair dealing, you can claim that even if they don't breach the contract as long as you don't fulfill the expectations of the parties upon the contracting. And in Oregon, you don't have to have a breach in order to have the breach of good faith and fair dealing, or at least I understand you don't. And I'm going to ask them if I'm correct about that. So it seems to me that your tort concept about what the duty would be over and above the words of the contract more fits into the breach of implied covenant of good faith and fair dealing. Yes, Your Honor. But the reason why we have been focusing on the terms of the contract is because the district court, in our view, erroneously found that the terms of the contract, including scans, would contradict the express terms of the contract. Well, I understand that. But the problem is that they tried to suggest that therefore that would eliminate the breach of implied covenant of good faith and fair dealing. Right? That's what he said? Yes. I understand. Yes. And from our view, that can't be reconciled with what's actually happening, where GEICO admitted in its briefing that sometimes scans are necessary to effectuate a repair and that, in fact, on the ground, they sometimes pay for these scans. And under the allegations in Mr. Hansen's complaint, we therefore think it was inappropriate for the district court to kick out Mr. Hansen's complaint on a motion to dismiss. Well, but, I mean, getting back to sort of dovetailing off the covenant of good faith, as I understand it, that would still require a reasonable contractual expectation. So I'm not sure that it, even if it doesn't require a technical violation of the contract, it would still require some expectation that the parties have under the contract. And so I'm trying to understand why your client, and I think Judge Watford's asked the same question in a different way, but what made him believe that a scan was a reasonable expectation in these circumstances? The light's not on. There's no mechanic that stepped forward and said we needed to do this to bring it into full compliance. Judge Nelson, under Oregon law, Oregon courts have said that industry standards can inform what is a reasonable expectation. So it comes back to the manufacturer's recommendation, and as you said, the reasons behind the manufacturer's recommendation. That's correct, Your Honor. Can the manufacturer, okay, that's interesting. So would your argument be that the manufacturer can't therefore amend the contract? Because I have a problem with that. If you say that you, because the contract does not assume that you're going to look to the manufacturer's recommendations, but your position would be that the manufacturer's recommendation informs the reasonable contractual expectations at the same time? Yes, and that covering scans does not contradict the express terms of the policy. And I can see I'm cutting into my rebuttal. You can finish your answer. Oh, okay. Yes, that the manufacturer expectations can inform what is a reasonable expectation, and then that just asks the question of whether those expectations contradict the express policy terms. And in our view, if you look at Oregon law on what it means to repair a car, when a scan is necessary to identify any latent damage, it does not violate the express terms of the contract to then cover those scans. Okay, we'll give you a couple minutes for rebuttal.  Let's hear from your opponent. Thank you, Your Honors. Dan Goldfein on behalf of Government Employees Insurance Company, or GEICO. First of all, the operative language is not the repair language. That's in the limit of liability. Operative language here is loss of. We always skip that proposition. And damage to the vehicle. Those are two plain, simple phrases that define the coverage here. The repair provision that my scheme counsel relies on defines a limit to the liability in terms of how much expense can be paid. There's no coverage in this particular case for pre- and post-scans. He wants his insurance agreement, plaintiff's answer, to cover pre- and post-scans. So you never, ever pay for those scans? As conceded in the record, there are, as part of a repair, some scans. So it is covered by the contract language. You can't take the position that the contract language excludes the paying for these scans. No, the contract language focuses on damage, too. Okay, so let's say that the scan is necessary to determine whether there has been damage to some component of the car. And it's definitely not visible, as your opponent is alleging. The only way to detect it is to do one of these scans. And let's say that the manufacturer says it's absolutely essential to do one of these scans because if you don't detect this damage, you know, it could lead to some kind of fatal accident later. And the repair shop is saying, my God, in order to really repair this car to the status it had before, we need to do this scan. Under those circumstances, you would say, right, as a reasonable insurance company would have to, that a scan – well, yeah, of course we'd pay for that. I appreciate the honor's hypothetical, but that's not what's been alleged here. It's not that far off. No, there's no – the only thing that's different is that we don't have the repair shop person alleging it, right? No, I think it's quite a bit different here. Okay. One, we don't have the repair shop, as your honor has noted. Two, they've not alleged any additional damage to – that's the operative language to the vehicle at this point. No, but my hypothetical was that what we're trying to figure out is whether there has been damage, and we can't detect that by a mere visual inspection. But that's where the conflation that the plaintiff has to our duty as to repair. We don't repair cars. We reimburse our insurers for their repair, or they don't have to have their car repaired. We reimburse for the estimate that they get on their repair. In that sense, as Judge Mossman correctly pointed out, the duty under the contract for the plaintiff is to present the damage to the vehicle. That's when our duty kicks in. It's a condition precedent. When do you pay? I don't understand. The scan is a detection mechanism. It's not a repair of anything. It's trying to figure out what needs to be repaired. So what are the circumstances when you will pay for a scan? I mean, they're not in the record before you. I don't know what the circumstances are if we pay for a scan. There are circumstances when a repair itself, when the body shop says the repair itself, needs to review the scan. It's to figure out whether additional work needs to be done, right? The scan doesn't fix anything. That's my problem with your position. It's not like it's a repair of something. It's a preventative mechanism to determine whether additional repairs are needed, isn't it? Well, again, GEICO does not repair the car. GEICO reimburses for the damage to the car, or loss of. But in this case, it's really a damage to. The damage to language is the operative language. And there is no allege on the record here before you, Your Honor, and what's been brought up on the record before Judge Mossman, and there's no suggestion otherwise, there's nothing presented saying that there's damage to, which is the condition precedent, to GEICO. So then your position is that you will never, ever pay for a scan, right? That's not the position. Then tell me when would you pay for a scan? I just don't understand what your position is. When it's part and parcel. We would pay for the scan assuming that the repair shop presented a legitimate reason for doing the scan. But in this particular instance. So that's the key thing that's missing here is that the repair shop that he took the car to didn't recommend that the scan be done? No, no. I mean, I don't think that's the key. I think, again, the policy says damage to. The key thing here is, A, he's not claiming we didn't reimburse him for the damage to his vehicle, and, B, he's not saying that there's any unrepaired damage at this point in time. Let me take at it just a little bit differently. There's a breach of an implied covenant of good faith and fair dealing in Oregon, right? Correct, Your Honor. And if you breach, if you do not breach the contract, can you breach the covenant? I suppose that's true, but in this particular. Yeah, but just a minute. Not only suppose it's true, Klamath off-project water usage says it's exactly true. As long as. As long as. Go ahead. As long as it doesn't contradict the express language. All right, so tell me. There's nothing in the express language here that says you shouldn't have done a scan. There's nothing in the express language that says you shouldn't have done a scan. There's nothing in the express language that says you've got to do a scan. But, nonetheless, you do do scans. And you do pay for scans. And so it could be a reasonable contemplation of the parties that you would do scans every time to make sure that the damage has been repaired. Why is the fact that you haven't done that, then, not a question of fact as to the breach of the covenant of good faith and fair dealing? Your Honor, two reasons. The operative language as to coverage is not the repair language which the plaintiff is conveying. But, nonetheless, go back to loss. Go back to damage. To determine the amount of your loss and your damage in this contract, somebody's got to make that determination. There's nothing in this contract that says who determines it or how it's to be determined. And, therefore, there's nothing in your exclusions that says you're not going to pay for these scans. And you admit you do pay for these scans when you think they're necessary. So why is it not at least a question of fact as to whether you have breached the covenant of good faith and fair dealing, even if you have not breached the contract? Because the plaintiff has not presented a circumstance that the scan was necessary related to the damage to the vehicle. Well, that's not necessarily so. If you read his allegations, he suggests there are. He does not know. He thinks there's more damage. And a scan is the only way to say that there isn't any more damage. And, therefore, it's a breach of the covenant of good faith and fair dealing. I think you've misstated his allegation. He wants a just-in-case scan. He has no idea and does not allege that there is any more damage. He doesn't even suggest it in the reply brief. So you're suggesting that if he just says, I don't know, then it isn't a breach? Even though it's my contemplation, you would have done this scan to make sure, on my behalf, that there wasn't damage? We don't. Geico does not do the scan. He had the choice of body shop. It is a matter of who does it. It's a matter of you were contracted to do it, to pay for the loss and the damage to his vehicle. That's what he's suggesting. Except that he's suggesting that we have to pay, that the coverage is for repair. The coverage is for the damage to the vehicle. Those are two different concepts. The limit of liability is the repair language, Your Honor. So the issue here is whether he has presented damage to. And Judge Mossman had it completely correct below. Let me go on further. Why didn't Judge Mossman allow him to amend? Because under his theory of the case, under Plaintiff Hanson's theory of the case. Well, but just a minute. They had a chance to put this theory up, and Judge Mossman said, under this theory, you got no theory. But maybe you would have an amendment to make. And he could go do a scan for himself and determine there was damage. And then he could come back and he could amend. He dismissed with prejudice based only on this complaint. Were there any other amendments ever? No. Did they ever get a chance to amend? No. But he threw it out. I disagree with you, Your Honor, that they didn't have a chance to amend. They did not seek. We argued that it wasn't covered. They did not seek an amendment in response to it. Even though they did not seek. Is the Oregon law that is if you do not seek, you throw it out? I mean, nobody even talked about it. Judge Mossman just says, I'm dismissing this with prejudice. Didn't even give them a chance to talk about it. I was at that oral argument. There was plenty of chance to discuss whatever they wanted to. Well, I read that what part of this, I read every part of this decision. Where was it in this argument where he should have jumped up and said, I want to amend? He didn't ever say it, and you never argued it. And, frankly, Judge Mossman then says, with prejudice. Okay, so counsel, let me ask you to maybe give you something to hang on. It seems to me that Hanson has made a pretty strident argument here. He is pretty determined to force Geico to pay. And we can suppose why. He's a mechanic of his own. He would love for Geico to pay for all of his clients' scans. It seems to me that Hanson had a pretty strident argument and was banking it all on forcing Geico to pay for this under the contract. And his counsel can dispute that, but I'd be interested in your view. Because that seems to me, as I was reading this, why the judge below did not allow amendment is because Hanson was kind of taking an all-or-nothing approach in this case. I appreciate the way Judge Nelson wants to answer my question, but I wish you would. I'll try to address both points. I think they made a tactical gambit, but you'll have to ask them what their intent was. They did not seek amendment in their briefing. They did not seek it in an argument. They did not move for leave. They did not seek amendment in the first brief here. They only sought amendment in the last two sentences of their reply brief here, and they don't tell us what that amendment would look like. They didn't give Judge Mossman a chance. They took a very specific theory of the case to Judge Mossman, and Judge Mossman correctly said under that theory of the case, and it's their theory continuing today, under that theory of the case there's no amendment that would fix. Now, I have no idea, as I sit here, and to be candid, you're putting an impossible burden on me to guess what their amendment would look like, but I have no sense of how that could fit their theory of the case, and particularly their theory of the class action that they allege. I think it was a tactical gambit. I think that they've waited too long to propose what their amendment would be. I think they waived it at least once in state court, I believe twice, but at least once in state court, and I think they've waived it under 9th Circuit precedent by not putting in their initial brief in this court. Can I ask a more fundamental question? Are there even any damages pled here? Perhaps that doesn't take away their right to amend, to add damages, but I don't see any damages actually pled. They don't allege that their premium, that they didn't get what they bargained for in their premium. They don't allege that there's any damage or loss that was not covered. They have a hypothetical claim here on what potential damages could be. Isn't that just a basic way we could resolve this case? Correct, Your Honor. You've said it better than I could say. Well, obviously they're seeking to recover the cost of the scan that you wouldn't pay for. But the scan is not the damage to the vehicle. Right, but it's a necessary component of the – just point me to the language in the policy that you're relying on. In the policy, the coverage portion of the policy provides – give me one second, Your Honor. I'm looking at ER 52, but I want to know if I'm looking at the right place. The losses we will pay you for? Yeah, the damage to – hold on a second, Your Honor. It's at ER 51. 51, okay. If you go down to – collision means loss, which is at sentence 3. Right. Then loss means in paragraph – sentence 8 or section 8. Right. Okay, at the bottom of that page, direct or accidental loss of or damage to an insured auto. Right. And what they want to – that's the coverage section that says, if you look at the top, physical damage coverage. Okay. What they point to, if you go to ER 52. No, no, no. I don't care what they're pointing to. I'm asking what you're pointing to. So this is it. That's it. And so tell me again, why do you ever pay for scans? Because when – there are occasions when there is damage to the vehicle that relates and ties to the scan. That's not what's alleged here. Give me an example. Like what? The airbags deploy. Okay. As an example. Okay, and then what? What about the engine light being on? Well, to be candid, the engine light might be on if there's an accident, but most of the time that's just the mechanical conversion. And there's no damage. Right? There's no damage in that scenario. You're trying to figure out whether there is damage that needs to be fixed. So why would you ever pay for the scan under your reading of what loss means there? Again, I think the example I gave you, when the airbags deploy, there is typically damage for the airbags to come back on and for that to work. Okay, so if a warning light comes on and says, extreme hazard, you know, if you don't check this out, you know, something catastrophic might occur, there's no damage in the sense that we can figure out what's wrong. We need to do a scan to figure it out. You would pay for it, right? With all due respect, they don't allege that the warning lights came on here. I'm just asking you a question. If a warning light came on and the manufacturer said, when this warning light comes on, you damn sure better do this scan, because that's the only way to figure out whether some catastrophic failure might occur. But looking at the car, you cannot determine that there is any damage to any component. It's just a safety check. Just so I understand your hypothetical, I'm running out of time, but just so I understand your hypothetical, as a result of the collision, the warning light is on? Yep. No damage can be detected to the car right now? Again, they did not allege that here. I'm asking you whether your company would pay for that. That's all I'm asking. I don't care what they allege for the purpose of this question. I'm trying to figure out what you think this language means, because you said, sometimes we'll pay for a scan. So I'm just trying to figure out, well, when? Your hypothetical, unlike the allegations here, sounds like damage to the car where that light is on. Why? Why is there damage to the car just because a light has come on? The car is running fine. Anyone looking at that car cannot say, oh, yes, this component is damaged. Then in your hypothetical, we would not pay for the scan. If the car is running fine. You would not pay for a scan when a warning light comes on and says, catastrophic failure ahead unless you get this checked out. And you would just say, come back and see us after you have this fatal accident, and then we'll see about whether we need to repair this? That's crazy. Again, Your Honor, I think you're confusing our duties. Our duty is not to repair the car. If there wasn't a collision in your hypothetical that caused damage to the vehicle. There was, and the light came on. But in terms of the component that it's warning you about, there's no damage you can see. That's why the scan is necessary, to figure out whether the damage is hidden. Right? I think that you're getting beyond my mechanical skills in the car. And what the scan would, if that was the hypothetical facts, they would have presented damage to Geico. Their body shop of choice, which is where they took it, would have presented that. That's not what is alleged here, Your Honor. Okay. Thank you very much. We will give two minutes to plaintiff's counsel for rebuttal. Thank you, Your Honors. Four quick response points. First, as alleged at paragraph 19 of our complaint, Mr. Hansen was told that Geico would only pay for a scan if a warning light on the dashboard was illuminated. But if you look at paragraph 18 of our complaint, we allege, and we also reference the manufacturer's statements to the fact that dashboard lights are not indicative of whether there is complete, whether there is damage to the car that would show up in a digital scan. If Geico wants to have, and if Geico only wants to pay for digital scans when there's a warning light on the dashboard, they are free to add that as an exclusion in their policy. But that is not in the policy. The second point that I would like to respond to is, repair is the operative term in the contract under Oregon law. If you look at the Gonzalez Oregon Supreme Court decision, the court in that case was interpreting insurance policy terms identical to the coverage here. And the court focused on the fact that when there's, when looking at whether there's damage to the car and the insurer decides to repair, to pay for repair, repair becomes the operative term. The third point I would like to respond to is that Geico keeps saying that we never alleged any harm that, and any damage that wasn't repaired. But if you look at paragraphs 3, 41, and 48, we allege that damage indeed went unrepaired. We don't know specifically what that damage is, because you can only identify that damage by doing a digital scan. And Judge Smith, you were asking about amendment to the complaint. After Mr. Hansen's complaint was kicked, and he realized that Geico would not be paying for the scan, this is not in the record, and we would amend on remand if given the opportunity to do so. But he did go and pay to have his car scanned, and he did find that there was damage to the car. And certainly that is something that we would add to the complaint on remand. The last point that I would like to raise, Your Honors, is just that the good faith and fair dealing, what is a reasonable expectation under a contract under Oregon law? It's a question of fact for the jury. Thanks very much. Thank you very much. The case just argued is submitted.
judges: N.R. Smith, Watford, R. Nelson